# UNITED STATES DISTRICT COURT

| EASTERN | District of | NEW YORK |
|---|---|---|

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| **V.** | |
| AMNER A. BORUKHOV | Case Number:     CR-13-144-001 |
| | USM Number:     81957-053 |
| | Jacob Laufer, Esq. |
| | Defendant's Attorney |

**THE DEFENDANT:**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    MAY 2 8 2014    ★

LONG ISLAND OFFICE

X   pleaded guilty to count(s)    COUNT ONE (1) OF THE INDICTMENT

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense | Count |
|---|---|---|---|
| 18 U.S.C. 1349, 1341 AND 1343 | CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD | JANUARY 2011 | ONE (1) |

    The defendant is sentenced as provided in pages 2 through   6   of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s)   TWO (2) THROUGH THIRTEEN (13)    ☐ is   X are   dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 8, 2014
Date of Imposition of Judgment

s/ Sandra J. Feuerstein

Signature of Judge

SANDRA J. FEUERSTEIN, U.S.D.J.
Name and Title of Judge

May 28, 2014
Date

DEFENDANT:      AMNER A. BORUKHOV
CASE NUMBER:    CR-13-144-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

FIFTY SEVEN (57) MONTHS WITH CREDIT FOR TIME SERVED IN MOROCCO.

☐ The court makes the following recommendations to the Bureau of Prisons:

X The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

     a  _____ ☐ a.m.  ☐ p.m.   on  _____ .

     ☐ as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on  _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered  _____ to  _____

at  _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

DEFENDANT:        AMNER A. BORUKHOV
CASE NUMBER:      CR-13-144-001

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

THREE (3) YEARS

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of

     future substance abuse. (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT:        AMNER A. BORUKHOV
CASE NUMBER:      CR-13-144-001

## ADDITIONAL SUPERVISED RELEASE TERMS

1. The defendant shall comply with restitution order and payment schedule and forfeiture provision.

2. Full financial disclosure to the Probation Department.

3. The defendant shall perform 100 hours of community service in a manner and at a rate approved by the US Probation Department. The defendant will cooperate in allowing the Probation Department to confirm the community service is complete..

4. The defendant shall participate in a mental health treatment program as approved by the Probation Department. The defendant shall contribute to the cost of services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able, and shall cooperate in securing any applicable third party payment. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay.

5. The defendant is prohibited in working in the financial industry or with any FINRA member firm in all capacities including but not limited to brokering the sales of commodities or securities on stack exchanges as a registered representative or broker-dealer, and is prohibited from serving as an officer or director of a public company/ The defendant is to assist the Probation Department in verifying the job description of any employment he secures while under supervision.

DEFENDANT: AMNER A. BORUKHOV
CASE NUMBER: CR-13-144-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0 | $ 2,214,615.92 |

☐ The determination of restitution is deferred _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be after such determination.

X The defendant must make restitution (including community restitution) to the following payees in the amount

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| SEE EXHIBIT A ATTACHED TO THIS JUDGMENT FOR VICTIM INFORMATION | 2,214,615.92 | 2,214,615.92 | |

| **TOTALS** | $ 2214615.92 | $ 2214615.92 | |
|---|---|---|---|

☐ Restitution amount ordered pursuant to plea _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for ☐ fine restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: AMNER A. BORUKHOV
CASE NUMBER: CR-13-144-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**   X   Lump sum payment of $ ___100.00___   due immediately, balance due

     ☐   not later than _____ , or
     X   in accordance   ☐ C,   ☐ D,   ☐ E, or   X   F below; or

**B**   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
     _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
     term of supervision; or

**E**   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
     imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**   X   Special instructions regarding the payment of criminal monetary penalties:

     RESTITUTION IMPOSED IN THE AMOUNT OF $2,214,615.92 DUE IMMEDIATELY AND PAYABLE AT A RATE OF
     $25.00 PER QUARTER WHILE IN CUSTODY AND 10% OF GROSS INCOME PER MONTH WHILE ON SUPERVISED
     RELEASE, WITH INTEREST PAYMENT WAIVED. SEE EXHIBIT A FOR VICTIM INFORMATION.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

X   The defendant shall forfeit the defendant's interest in the following property to the United States:
     SEE FINAL ORDER OF FORFEITURE DATED MAY 8, 2014 ATTACHED TO THIS JUDGMENT.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

32.    Alex Borukhov told Investor 7 to invest in palladium. Investor 7 agreed to give him
       $2,000 to purchase palladium on his behalf. That check was deposited into the Chase
       account.

33.    Investor 7 never received monthly statements from Gold Bullion regarding his
       investment. In addition, Investor 7 never received the palladium that Gold Bullion was
       supposed to purchase for him. Nor did Gold Bullion return any of the $2,000 that
       Investor 7 gave to Gold Bullion.

### Victim Impact

34.    The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18
       offense. Restitution totaling over $2 million ($2,194,615.92 according to the case agent,
       based on bank records; $2,228,559.92 according to the victims, based on "Declaration of
       Victim Losses" forms sent to them by the Probation Department; and $2,214,615.92 by
       the Probation Department) is owed to the 72 victims listed below (or their estates).
       Comments from the victim declarations are footnoted. Where there are discrepancies
       between the bank records and the declarations, the dollar amount used by the Probation
       Department to calculate the loss is in bold typeface. As indicated in a footnote, an
       additional $889 in losses was submitted by Elmer W. Schroeder on behalf of his son;
       however, his son is not a victim of the offense and that dollar amount is not included in
       the loss calculation. For victims from whom affidavits were not received, the Probation
       Department relies on the loss information provided by the case agent, based on bank
       records. The case agent also subtracted from the loss figure money that was returned to a
       few victims. The contact information for each victim will be provided to the Clerk's
       Office upon entry of an Order of Restitution. **Amner A. Borukhov** is liable for the total
       amount of restitution. As explained below, Markiel Borukhov's liability, for guideline
       computation purposes and restitution, is limited to $622,770.

| Victim | Loss Amount (from Case Agent/from Victim) |
|---|---|
| Elmer W. Schroeder & Ruth R. Schroeder | $10,000/$10,000 or 40 ounces of investment grade palladium[2] |
| Richard Brusik | $255,000 |
| Gary W. Lund | $10,000/$10,000 |
| William Cummings | $10,000/$10,000 |
| Alvin L. Chowning | $110,000/$110,000 |
| Dominick Fortunato | $10,000 |
| Paul Keefer | $35,000/$35,000 |
| Mark R. Cowling | **$10,000/$18,000**[3] |

---

[2] Mr. Schroeder's son advised that his father would rather have the palladium than the cash: "($10,000 initial
investment for 40 ounces of 99.95% pure, investment grade, Palladium. (Current market value is approximately
$29,940.00.)" In his affidavit, Mr. Schroeder requested reimbursement for his son: "$889.00 for 18½ hours of
Ronald L. Schroeder's . . . personal time and expense from October 13, 2010 through November 12, 2010
researching and tracking down Amner (Alex) Borukhov and Gold Bullion Enterprises, LLC and providing copies of
gathered information to FBI agent Peter Brady in Kew Gardens, NY."
[3] Mr. Cowling explained: "$10,000 original investment. $18,000 is where the Palladium was at when I tried to sell it.
That is when I was not receiving any call backs. Palladium is the metal that I invested in (24 oz.)."

| Victim | Loss Amount (from Case Agent/from Victim) |
|---|---|
| Charles F. Klein | $10,000/$10,000 |
| Donald Pshigoda | $20,000 |
| William Hajek | $5,000 |
| Dennis Bartos | $5,000 |
| Kenneth Bashore | $111,942.46/$111,942.46[4] |
| James Siegman | $5,000[5] |
| Lawrence Brase | $30,000/$30,000 |
| Darrell Troville | **$5,000**/$10,000[6] |
| Susan Boyden | $5,000 (Executor of Estate of Norbert Lypps) |
| Martin Hoffman | $30,000 |
| Herman Sloan | $30,000 |
| Joseph O'Brien | $10,000 |
| David Vowell | **$10,000**/$12,500[7] |
| Rodney L. Oberg | $837,903.26/$837,903.26 |
| Gordon Shippy | $207,770.20 |
| Frank L. Saiz | **$5,000**/$55,000[8] |
| Scott Sim | $5,000/$5,000 |
| Victor S. Kennett | $10,000/$10,000 |
| Primo Baioni | $5,000 |
| Glenn E. McMillan | $5,000/$5,000 |
| Egon Kamarasy | **$5,000**/$6,300[9] |
| Thomas Jensen | $5,000 |
| Guy Grant | $5,000/$5,000 |
| Seymour Sachs | $10,000/$10,000[10] |
| Anthony Martella | $2,000 |
| Richard Cooper | $10,000 |
| Michael Ward | **$5,000**/$6,474[11] |
| Kenneth Luetscher | $20,000 |
| Carlos Torres | $5,000 |
| Robert Turk | $10,000 |
| Kenneth Squieri | $5,000/$5,000 |

[4] Mr. Bashore wrote: "Lost all my savings including an IRA. I also had to pay about $5,000 income tax on cashing out my IRA."

[5] Mr. Siegman died in July 2011. To date, attempts to contact his widow have been unsuccessful.

[6] Mr. Troville included in his loss amount an additional $5,000 for "what the stock supposedly made."

[7] To date, attempts to contact Mr. Vowell for an explanation regarding the discrepancy in the loss amount provided by the case agent and his declared losses have been unsuccessful.

[8] To date, Mr. Saiz has been unable to provide documentation to support the loss amount in his declaration.

[9] Mr Kamarasy explained: "I have sent $5,000 to Gold Bullion Enterprises. Interest at 6% per annum or $1,300. Total loss $6,300."

[10] Mr. Sachs wrote: "Mr. Borukhov sold me $10,000 worth of palladium (44 oz.). When I tried to sell the metal, I was not able to contact Mr. Borukhov anymore. I don't believe that he ever purchased the metal for my account."

[11] Mr. Ward stated that he is entitled to restitution of "$6,474 or the current value of 13 oz. of palladium." He explained: "I purchased 13 oz. of palladium to be secured in Gold Bullion's vault for me until I instructed them to either send to me or sell for me. When I called to give them instructions as to how to proceed I was informed they [were] bankrupt but had holdings in Europe that would reimburse me. I was selling in order to install siding on my business and the value at the time was $6,475 [and] I purchased it for $5,000."

| Victim | Loss Amount (from Case Agent/from Victim) |
|---|---|
| Gene Howell | $10,000 |
| Sanford Porter | $5,000/$5,000 |
| John Merzlock | $10,000/**$11,000**[12] |
| Howard B. Christy, Jr. | $5,000/$5,000[13] |
| Ramon Vigil | $5,000[14] |
| John Thomas Misgen, Jr. | $5,000[15] |
| Steven Spaeth | $5,000 |
| Ronald Ulven | $5,000 |
| Don Max Vars | $5,000 |
| Arlan Beyer | $5,000 |
| David Spence | $5,000 |
| Milton Marsh | $5,000 |
| Joseph Jauquet | $10,000 |
| Karl Fink | $5,000/**$25,000**[16] |
| Gary Jaster | $10,000/$10,000 |
| Gilbert Zientek | $5,000/$5,000 |
| James Bradford | $10,000 |
| John Lemke | $10,000 |
| Jody K. Malm | $10,000 |
| Henry Duffrin | $55,000/$55,000[17] |
| Sanford Porter | **$5,000**/$7,170[18] |
| Marvin Sleven | $5,000 |
| Bill F. Gray & Joyce Gray | $10,000/$10,000 |
| Rick Van Santen | $20,000 |
| Mehrdad Sakaki | $10,000/$10,000 |
| John A. Jaecker | $10,000/$10,000 |
| Dennis Clarke | $5,000 |
| Darrell E. Smith | $5,000 |
| Milton Marsh | $5,000 |
| Robert F. Amarante | $25,000 |

[12] Mr. Merzlock explained by telephone that in addition to his $10,000 investment, he paid a $1,000 "commitment fee" to Gold Bullion. He will provide bank statements to corroborate his two payments.

[13] Mr. Christy provided the following: "I am 72 years old. In 2006 I became very ill and was bedridden. In June 0f 2009 I was still sick. I was on strong meds and do not even remember this transaction. I have check #9125 made out to Gold Bullion Enterprise – I never received anything for this payment."

[14] Mr. Vigil died in May 2010. An affidavit of loss sent to his widow, Imelda Vigil, was returned by the Postal Service as undeliverable.

[15] Mr. Misgen died in August 2010. To date, attempts to contact his siblings have been unsuccessful.

[16] Mr. Fink was interviewed by telephone regarding the discrepancy in the loss amount he submitted; he stated that the dollar amount is accurate. He provided copies of two checks (front and back) made out to Gold Bullion, dated February 16, 2010, and December 14, 2010, for $5,000 and $20,000, respectively.

[17] Mr. Duffrin wrote: "5,000 dollars and then 50,000 dollars for bullion. Never received anything."

[18] Mr. Porter explained: "On the evening of 8/5/10 I received a phone solicitation from a firm called Gold Bullion Enterprises LLC proposing a sale of 12 oz. Palladium for the sale price of $5,000. I accepted this proposal and mailed them a check for $5,000. From that date I have never heard a word about them except a [rumor] that they had declared bankruptcy. My claim against Gold Bullion Enterprises amounts to either $5,000 the original value or $7,170 reflecting today's value of this investment."

| Victim | Loss Amount (from Case Agent/from Victim) |
|---|---|
| Scott J. Salzmann | $5,000 |
| Steven Giese | $10,000/$10,000 |
| Paul R. Kaszubski | $10,000 |

### The Defendants' Participation

35. **Amner A. Borukhov** was taken into custody in Morocco by the United States Marshals Service on February 7, 2013. He had been in Moroccan custody since May 31, 2012, when he walked into a local police station with his brother to file paperwork regarding a business start-up and they were arrested because of an Interpol alert (a "Red Notice" seeking their location and arrest with a view to extradition or similar lawful action) listing them as wanted fugitives. Although there is no extradition treaty with Morocco, an *ad hoc* arrangement was made for their extradition. **Amner A. Borukhov** made no post-arrest statements, but subsequently pled guilty to conspiring to commit mail and wire fraud. As the loss was more than $1 million, 16 levels are added to the base offense level per USSG §2B1.1(b)(1)(I). The offense involved 50 or more victims; per USSG §2B1.1(b)(2)(B), 4 levels are added. The instant offense was basically a one-man operation. Although **Amner A. Borukhov** was assisted by, and at times directed the activities of, his brother, he cannot be described as an organizer, leader, manager, or supervisor of the conspiracy, and an aggravating role adjustment is not warranted. However, his participation cannot be described as either minimal or minor; therefore, a mitigating role adjustment is also not warranted.

36. Markiel Borukhov was taken into custody in Morocco by the United States Marshals Service on February 7, 2013. He had been in Moroccan custody since May 31, 2012, when he walked into a local police station with his brother to file paperwork regarding a business start-up and they were arrested because of an Interpol alert (a "Red Notice" seeking their location and arrest with a view to extradition or similar lawful action) listing them as wanted fugitives. Although there is no extradition treaty with Morocco, an *ad hoc* arrangement was made for their extradition. Markiel Borukhov made no post-arrest statements, but subsequently pled guilty to conspiring to commit mail and wire fraud. He worked for his brother, co-defendant **Amner A. Borukhov**, on a part-time basis. As directed by his brother, Markiel Borukhov incorporated Gold Bullion, opened bank accounts for Gold Bullion, and leased office space for Gold Bullion. He endorsed checks, deposited checks, and withdrew money from Gold Bullion bank accounts. He placed telephone calls for his brother, and his brother made the sales pitch to the victim investors, sometimes using an alias. He became aware that Gold Bullion was a fraud in June 2010, more than a year after his brother commenced the instant offense. At that time, he also became aware that proceeds from the fraud had been used to pay for his personal expenses, tuition, and a down payment on a car. He fled the country with his brother when his brother became aware of the instant investigation. He is accountable for losses for an eight-month period, from June 2010 until January 2011, totaling $622,770. As the loss was more than $400,000, 14 levels are added to the base offense level per USSG §2B1.1(b)(1)(H). The offense involved 10 or more victims; per USSG §2B1.1(b)(2)(A), 2 levels are added. Markiel Borukhov's role in the instant offense, as